IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 03-cv-01970-MSK-BNB

MOUNTAIN STATES SHEET METAL COMPANY,

    Plaintiff,

v.

SHEET METAL WORKERS, LOCAL NO. 9,

    Defendant.

---

### OPINION AND ORDER GRANTING SUMMARY JUDGMENT
---

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(# 101)**, and the Plaintiff's response **(# 107)**; and the Plaintiff's Motion for Summary Judgment **(# 103)**, and the Defendant's response **(# 111)**.

### BACKGROUND

The parties have jointly stipulated to the following undisputed facts.

Plaintiff Mountain States Sheet Metal Co. ("Employer") and Defendant Sheet Metal Workers, Local No. 9 ("Union") are parties to a collective bargaining agreement ("the Agreement"). Section 1-1 of the Agreement states that the Agreement covers "all employees of [the Employer] who are engaged in, but not limited to, the (a) manufacture, fabrication, assembling, handling, erection . . . of all ferrous or non-ferrous metal work and all other materials . . .; and (e) all other work included in the jurisdictional claims of [the Union]."

However, the parties have historically applied the Agreement only to construction employees, not to the Employer's manufacturing staff.

On July 30, 2002, the Union filed a grievance under Article 10 of the Agreement, contending that the Employer's manufacturing work fell within the scope of Section 1-1 of the Agreement and that such manufacturing work should be offered to members of the Union. The Union pursued the grievance through the grievance procedure and sought binding arbitration before the National Joint Adjustment Board ("the NJAB") over the objections of the Employer that the subject-matter of the grievance was not arbitrable and that the NJAB lacked jurisdiction. Simultaneously, the Employer filed a petition with the National Labor Relations Board ("the Board"), seeking an election to determine whether its manufacturing employees wished to be represented by the Union.

The Regional Director of the Board reviewed the petition, and on October 4, 2002, ruled that the Agreement was a prehire agreement subject to Section 8(f) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(f), and that the petition raised a question concerning representation that required an election. The Union appealed the Regional Director's ruling to the full Board, where the matter remains *sub judice*. In the meantime, the Regional Director conducted an election among the manufacturing employees and impounded the unopened ballots pending the Board's review. Thereafter, the Union's grievance was presented, over the Employer's objection, to the NJAB for arbitration. On September 8, 2003, the NJAB ruled in favor of the Union, finding that the manufacturing work fell within the scope of the Agreement.

The Employer then commenced this action, seeking to vacate the NJAB award pursuant to 29 U.S.C. § 185. *United Paperworkers Intl. Union v. Misco, Inc.*, 484 U.S. 29, 40 n. 9 (1987)

(29 U.S.C. § 185 empowers federal courts to resolve disputes relating to collective bargaining agreements, including disputes over arbitration). Upon sharpening of the issues, the parties stipulated to the above-referenced facts and cross-moved for summary judgment.

## JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## ANALYSIS

### A. Standard of review

Because the parties have stipulated to all material facts, the Court need not recite the familiar summary judgment standard, and can proceed to resolve the issue as a matter of law.

### B. Review of arbitration awards

In an action to confirm or vacate an arbitrator's award issued pursuant to a collective bargaining agreement, the Court's analysis is limited to two primary questions: whether the issue is one subject to arbitration under the terms of the agreement, *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960), and whether the award arguably draws its essence from the contract. *Misco,* 484 U.S. at 38, *citing United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960). In other words, the Court's role is not to determine whether the arbitrator did his job well, correctly, or reasonably, but simply, whether he did it. *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir.1996).

The Court will address these issues in reverse order, as there appears to be no material dispute by the parties that the NJAB's award was drawn from the Agreement. Section 1-1 of the Agreement clearly states that the contract's scope extends to employees engaged in

manufacturing. Although the parties agree that they have not historically considered manufacturing employees to be subject to the terms of the Agreement, the NJAB was within its discretion to reject the parties' bargaining history in favor of the unambiguous language in the Agreement. *See e.g. Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC.*, 319 F.3d 1060, 1065 (8th Cir. 2003) ("an arbitrator is not free to ignore or abandon the plain language of the parties' agreement. . . if the written agreement is silent, the arbitrator may consider past practices and bargaining history to fill gaps "). Given that Section 1-1 expressly states that "manufactur[ing]" employees are included within the scope of the Agreement, the NJAB's conclusion that the Agreement encompassed manufacturing work was utterly reasonable. Accordingly, the Court finds that the NJAB award draws its essence from the contract.

### C.  Tension between the Act and the Agreement

The more difficult question is whether the issue is one subject to arbitration under the Agreement. On the surface, the issue does not appear to be debatable. Section 10-1 of the Agreement provides that "Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement," are subject to the grievance procedure. There can be little dispute that the Union's grievance, which specifically identified the dispute as arising under the terms of Section 1-1 of the Agreement, was a dispute "arising out of the interpretation" of the Agreement. Thus, on its face, the Union's grievance was subject to arbitration under the terms of the Agreement.

The difficulty arises because of tension between the parties' contractual obligations and the scope of issues that fall within the Act. The Board is conferred with the exclusive jurisdiction to hear and determine disputes involving representative status– that is, whether a

particular union enjoys sufficient support among employees in an appropriate bargaining unit such that should be designated as the bargaining representative for the employees of that unit. *See e.g.* 29 U.S.C. § 159(b), (c). From one perspective, the Union's demand for manufacturing work could be seen as a claim that it enjoyed majority support among the manufacturing employees, such that a Board election was required. From from a different perspective, the Union's demand was a practical one-- that the employer cease assigning the manufacturing work to the non-unionized manufacturing employees and reassign that work to members of the Union as required by the Agreement. The Employer viewed the case as presenting a question falling within the Board's exclusive jurisdiction, while the Union views the matter as presenting a simple issue of contract interpretation. Each side has secured a victory for their position. The Employer obtained a ruling from the Regional Director that the case presented a representation issue; the Union secured an award from the NJAB that entitled it to the manufacturing work. The Employer, understandably, finds itself caught on the horns of a dilemma: either it complies with the arbitration award, forcing the manufacturing workers to accept representation by the Union despite their desires, potentially violating 29 U.S.C. § 158(a)(1) and (5) of the Act, or it complies with the Regional Director's finding that the manufacturing employees are entitled to vote on representation, but risks a suit by the Union for damages resulting from the Employer's violation of the arbitration award.

Such tension is not unknown in labor cases. In *United Auto Workers v. Telex Computer Products, Inc.*, 816 F.2d 519, 525-26 (10th Cir. 1987), the 10th Circuit faced a largely similar situation which "raises both the issue of [Board] jurisdiction and a potential award in arbitration that unlawfully deprives employees of their right to choose their own representative." In *Telex*,

5

the employer had contractually agreed to recognize the union as representative of all employees "in the metropolitan Tulsa, Oklahoma area." 816 F.2d at 520-21. When the employer opened a new plant in suburban Tulsa, the union demanded that the employer recognize it as the representative of the employees at the new plant pursuant to the contract. *Id.* at 521. The employer refused, observing that the demand raised an issue regarding the scope of the established bargaining unit, and was subject to the exclusive jurisdiction of the Board. *Id.* The union moved to compel arbitration of the issue under the contract, and the 10th Circuit agreed that "[m]atters touching on union representation, in the context presented here, are within the concurrent, not exclusive jurisdiction of the [Board]. If an agreement allows arbitration of contractual disputes that may affect representational issues, the concurrent jurisdiction of the [Board] will not deprive the parties of their bargain." *Id.* at 525; *see also Communication Workers of America v. US West Direct, Inc.*, 847 F.2d 1475, 1477-81 (10th Cir. 1988); *Bell Cold Storage, Inc. v. Over-the-Road Transfer, Cold Storage, Grocery & Market Drivers, Helpers & Inside Employees Union*, 885 F.2d 436, 439 (8th Cir. 1989); *Hotel & Restaurant Employees Union v. J.P. Morgan Hotel, Inc.*, 996 F.2d 561, 567 (2d Cir. 1993) ("courts do not usurp NLRB authority when enforcing the arbitration clauses of a private contract, even when the matter to be arbitrated is representational").

All of the various cases addressing this issue arise from the Supreme Court's ruling in *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261 (1964). In that case, the employer and union were parties to an agreement covering production and maintenance employees, while the employer simultaneously recognized a rival union as representative of technical employees. 375 U.S. at 262-63. The production and maintenance union filed a contract grievance, alleging that

technical employees were performing production work that belonged to its members. When the union sought arbitration of its grievance, the employer resisted, arguing that the matter presented a representational question for the Board. In affirming the decision to compel arbitration, the Supreme Court surveyed the policies underlying labor arbitration and the Board's authority under the Act, and concluded that "the possibility of conflict" between the two "is no barrier to resort to a tribunal other than the Board." 375 U.S. at 272. The Court went on:

> However the dispute be considered--whether one involving work assignment or one concerning representation--we see no barrier to use of the arbitration procedure. If it is a work assignment dispute, arbitration conveniently fills a gap and avoids the necessity of a strike to bring the matter to the Board. If it is a representation matter, resort to arbitration may have a pervasive, curative effect even though one union is not a party.

*Id.* Thus, although the parties may characterize the dispute differently, it is well-established law that the exclusive jurisdiction of the Board does not preclude arbitration of an issue that touches upon both representation questions and contract interpretation issues, nor does it excuse an employer from adhering to an arbitration award on such issues.

### D. The Regional Director's decision

Upon an even closer examination of the parties' briefs, the true crux of the dispute does not appear to be whether arbitration can take place in the face of a potential representation issue, but whether the NJAB's award survives once the Regional Director has ruled to the contrary.[1] In this regard, the parties agree that, as a matter of law, a ruling by the Board trumps any inconsistent arbitral award. *Carey*, 375 U.S. at 272 ("Should the Board disagree with the arbiter,

---

[1] Although the Union has appealed the Regional Director's decision to the Board, such an appeal does not operate to stay the effect of that ruling. *See e.g.* 29 C.F.R. § 101.21(d); § 102.67(b). This Court cannot speculate as to the outcome of that appeal, and must proceed on the case as it presently exists– that is, giving effect to the Regional Director's ruling.

7

by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence"); *US West*, 847 F.2d at 1480 ("the Board will not be bound by the arbitrator's determination"). The Employer argues that the ruling in its favor by the Regional Director is sufficient to invoke this rule and nullify the NJAB award.

The gist of the Employer's argument is that the arbitral award is inconsistent with the Regional Director's ruling because "agreements authorized under Section 8(f) of the [Act] cannot lawfully be a basis for union representation outside the construction industry," and thus, "it is unlawful to apply [the Agreement]" to the manufacturing employees. *See Docket* # 103 at 5. To understand this contention, it is necessary to briefly summarize some key provisions of labor relations law. The Act strives to bring democracy to the shop floor, allowing a union to act as exclusive representative for employees in a given bargaining unit only upon a showing that a majority of employees in that unit desire such representation. 29 U.S.C. § 159(a). However, Section 8(f) of the Act is a peculiar exception to this principle, allowing employers "engaged primarily in the building and construction industry" to enter into "prehire" agreements with a union. 29 U.S.C. § 158(f). Under these prehire agreements, the employer and union agree in advance that the employees will be represented by the union, even before the employees have had a chance to make their desires known. Section 8(f) reflects a recognition that construction projects are often of such a short-term nature that the entire project could be completed and the employees discharged before the full-blown election procedure could be implemented. *See e.g. Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 265-66 (1983). Thus, to restate the Employer's argument: the Regional Director found the Agreement (from which the arbitral award flows) to

be a Section 8(f) agreement; Section 8(f) agreements apply only in the construction industry; the award seeks to adjudicate the rights of manufacturing, not construction, employees; and thus, the award is inconsistent with– and thus preempted by– the Regional Director's findings.

This argument fails for several reasons. First, a review of the determination reveals that the Regional Director <u>did not</u> find that the current Agreement was one pursuant to Section 8(f). The Regional Director's decision states that the "Agreement was originally entered into as an 8(f) agreement and was historically applied to employees in the building and construction industry as an 8(f) agreement by the parties for all relevant periods <u>through December 2000</u>." *Second Amended Complaint*, Ex. C at 13 (emphasis added). However, the Regional Director found that the Employer's construction business essentially ceased in December 2000, and the Regional Director expressly refused to consider whether, in light of that cessation, the Employer remained "engaged primarily in the building and construction industry" for purposes of Section 8(f):

> Although not clear, it appears that the Union's argument that the . . . Agreement is a [non- 8(f) agreement] might be founded on the premise that after December 2000, [the Employer] ceased to be an employer engaged primarily in the building and construction industry. . . I conclude that I need not determine, for the purpose of processing the Employer's petition, whether [the Employer's] two-year hiatus in performing building and construction work has had any legal effect on what was otherwise an 8(f) relationship.

*Id.* at 14. Thus, the Employer is incorrect in asserting that the Regional Director necessarily found the current Agreement– which took effect in 2001, after the Employer's construction work had ceased– remained a Section 8(f) agreement.

Second, even assuming that the Employer remained engaged in the construction industry, and that the Agreement was one pursuant to Section 8(f), the Employer's assertion that "it is

unlawful" to apply that Agreement to manufacturing employees is incorrect.  Section 8(f) limits the enforcability of prehire agreements to employers "engaged <u>primarily</u>" in the construction industry.  239 U.S.C. § 158(f) (emphasis added).  Although that statute would not apply to "employers who <u>merely</u> manufacture and assemble products for installation by others at construction sites," *Clark v. Ryan*, 818 F.2d 1102, 1107 (4th Cir. 1987) (emphasis added), the Board has held that "Section 8(f) applies to employers who provide both labor and materials for construction . . . In addition, Section 8(f) has been applied to companies engaged in the general contracting business which involves employees working and performing services at construction sites, such as sheet metal contractors."  *See e.g. Techno Constr. Corp.*, 333 NLRB 75, 2001 WL 65072 at * 13 (2001); *see also Pekowski Enterprises, Inc.*, 327 NLRB 413 (1999).  Thus, there is nothing inherently unlawful about extending a Section 8(f) agreement to manufacturing employees of an employer who is otherwise primarily engaged in the construction industry.  So long as the Employer is sufficiently engaged in construction so as to enter into Section 8(f) agreements, such agreements can encompass all of its non-managerial employees, not just those engaged in construction work.

 Upon careful review of the Regional Director's decision, the Court finds nothing therein that is inherently inconsistent with the arbitral award of manufacturing work to the Union at this time.  The Regional Director <u>did</u> find that a question concerning representation exists, and an election was held to determine the desires of the employees.  When finally determined by the Board, an election outcome favorable to the Employer might arguably conflict with the arbitral award, but the Court need not address this hypothetical situation at this time.  It is sufficient to find that, although the Regional Director has issued a ruling in the underlying representation

case, nothing in that ruling is inherently inconsistent with the arbitral award, and thus, does not pose any impediment to affirming that award.

## CONCLUSION

For the foregoing reasons, to the extent that both the Defendant's Motion for Summary Judgment **(# 101)** and the Plaintiff's Motion for Summary Judgment **(# 103)** request a summary determination, they are **GRANTED**. No trial is required. As a matter of law, Defendant is entitled to a judgment confirming the arbitration award, and such judgment shall enter contemporaneously with this opinion.

Dated this 18th day of July, 2005

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge